# THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 2, 2016

## GERALD COLLINS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Gibson County**
**No. 19041    Clayburn Peeples, Judge**

───────────────

**No. W2016-00085-CCA-R3-PC – Filed December 6, 2016**

───────────────

The Petitioner, Gerald Collins, appeals from the denial of post-conviction relief by the Circuit Court for Gibson County.  On appeal, the Petitioner argues that he received ineffective assistance of counsel and that his guilty plea was involuntary.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jeff Mueller, Jackson, Tennessee, for the Petitioner, Gerald Collins.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Garry G. Brown, District Attorney General; and Hillary L. Parham, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On May 6, 2013, the Petitioner was indicted by the Gibson County Grand Jury in Case No. 18919[1] for rape of a child and aggravated statutory rape.  The Petitioner was later charged in a superceding indictment in Case No. 19041 with rape of a child, especially aggravated sexual exploitation of a minor, and aggravated statutory rape.  The charges stemmed from the Petitioner's sexual relationship with a nine-year old girl over a period of three years and nude photographs of the minor victim found on his cellphone.  During the investigation, the Petitioner admitted that he had sexual intercourse with the minor victim "approximately [ten] times over the [past] three years" and that he was

─────────────

[1] The record on appeal does not contain the indictments; however, we glean this information from the trial court's order denying relief.

aware of her age before engaging in sexual intercourse.

On February 25, 2015, the Petitioner entered a guilty plea pursuant to a plea agreement. In exchange for the dismissal of aggravated statutory rape, the Petitioner pled guilty to two counts of rape and received ten years for each count. His sentences were aligned consecutively, for a total effective sentence of twenty years. At the guilty plea colloquy, the trial court asked the Petitioner the following series of questions:

COURT: I know [second counsel] has worked really hard on this case, but have you had as much time to speak with her about it as you need?

PETITIONER: Yes, sir.

COURT: Are you satisfied with her representation?

PETITIONER: Yes, sir.

. . .

COURT: So you know that if I accept this plea I will find you guilty of two separate counts of rape?

PETITIONER: Yes.

Following this exchange, the court explained to the Petitioner the rights he would waive by pleading guilty, including his right to a jury trial, his right to remain silent, his right to confront witnesses, his right to compel or subpoena witnesses, and his right to an appeal. The Petitioner indicated that he understood these rights and the plea agreement. Upon concluding that the Petitioner's guilty plea was knowing and voluntary, the trial court accepted the Petitioner's guilty plea.

The Petitioner filed a pro se petition for post-conviction relief, alleging that his two attorneys, both of whom were employed in the Public Defender's Office, failed to communicate with him, failed to investigate his whereabouts on the date of the offense, failed to show him any discovery in his case, and forced him to sign the plea agreement. The Petitioner was appointed counsel who filed an amended petition on the Petitioner's behalf alleging that the Petitioner was "[physically] threatened [by his attorney and] felt compelled to enter a guilty plea." Although the record does not reflect that the amended petition incorporated the Petitioner's pro se petition, the allegations raised in both petitions were discussed during the post-conviction hearing and in the findings of the

post-conviction court.

**Post-Conviction Hearing.** At the November 30, 2015 post-conviction hearing, the Petitioner testified that the offense dates in the indictment were incorrect because he was either "incarcerated in this county jail or Madison County on some of the occasions." He explained that he did not know the victim "at the time when they was trying to say [the Petitioner] knew them." When the Petitioner tried to discuss his concerns with counsel, who we will refer to as first and second counsel, he claimed that they "never could come up to a reasonable decision" and ignored his concerns. The Petitioner also claimed that first and second counsel never reviewed any of the State's evidence with him. He asked both counsel to show him "proof of the crime," such as DNA evidence or "rape kit tests" or "[a]ny kind of test . . . showing specifically what [the Petitioner] was being charged for," but this proof was not forthcoming. The Petitioner acknowledged that first and second counsel did provide him with "one discovery," but when he tried to discuss all of the State's evidence with his attorneys, "it was like trying to talk to a wall." He was never provided a copy of his statement to police or the victim's forensic interview. Additionally, second counsel failed to provide him with copies of any motions or "filings" and neither first nor second counsel ever responded to his request for certain documents.

The Petitioner also testified that first counsel forced him to accept the second plea agreement from the State. At the time he received this plea agreement, first counsel told the Petitioner that if he proceeded to trial, he was facing a sentence of thirty-seven to seventy years. According to the Petitioner, the day before the guilty plea hearing, first counsel became upset with the Petitioner, raised his voice, and "grabbed a hold of [the Petitioner], shook [the Petitioner], and told [him that he] needed to take [the second offer]." This incident, coupled with the fact that he could receive seventy years, "scared" the Petitioner, and he agreed to sign the plea agreement. The next day, second counsel entered the Petitioner's guilty plea. The Petitioner did not attempt to withdraw his guilty plea or notify second counsel of the physical threat by first counsel because he thought that "after you sign for anything it's done and over with."

On cross-examination, the Petitioner acknowledged that second counsel filed a motion to suppress the nude photographs of the victim and the Petitioner's statements to police. He confirmed that an investigator testified during the suppression hearing about the contents of the Petitioner's statement to police. However, he testified that the investigator provided conflicting versions of his statement. The Petitioner also testified that he reviewed some of the State's evidence with second counsel; namely, the nude photographs of the minor victim that were found on his cellphone, but he claimed that the cellphone was not his.

The Petitioner said that despite his responses at the guilty plea hearing, he was "not happy with the way they done it" but was "told to agree with them and let it go." The Petitioner asked one question about court costs during the hearing but raised no other issues before the court.

First counsel began representing the Petitioner in December 2012. He first met the Petitioner during the early stages of his case and once the case proceeded to Circuit Court, second counsel became involved in the case. First and second counsel worked together on the Petitioner's case, but second counsel filed motions on the Petitioner's behalf and entered the Petitioner's guilty plea. After reviewing the State's evidence, first counsel realized that the State had a "pretty good case" against the Petitioner and began working on securing a favorable plea agreement for the Petitioner. First counsel testified that the Petitioner was concerned about the dates in the indictment, but he could not recall the substance of that conversation. When asked whether he reviewed any of the State's physical evidence with the Petitioner, first counsel explained that there was no physical evidence of the rape since the offense had occurred weeks before the Petitioner was arrested. Counsel could not recall reviewing the Petitioner's statement with him, but he explained that either first or second counsel would have reviewed the statement as soon as it was available. Counsel recalled discussing the State's initial plea offer with the Petitioner and explaining that the State found nude photographs of the victim on the Petitioner's phone and that if he refused the offer, the State would seek additional charges for possession or possibly distribution of child pornography. Finally, first counsel denied grabbing or physically threatening the Petitioner. While first counsel acknowledged that he used strong language when speaking to the Petitioner, he denied grabbing the Petitioner in a forceful or threatening manner.

Second counsel was assigned to represent the Petitioner in Case No. 18919 and Case No. 19041. Second counsel was aware of the Petitioner's concerns regarding the dates in the indictments, and she explained to him that the date range meant that the offense occurred sometime during that time period, not that the rape occurred every day during that time period. She confirmed that the Petitioner did request copies of his statement to police, the victim's forensic interview, and any physical evidence the State had against him. Second counsel testified that the Petitioner never received physical copies of his statement because his statement was not in writing. Second counsel testified that she was "just given information as to what was said" and disclosed that information to the Petitioner. However, she affirmed that she did receive a summary of the victim's forensic interview, and she discussed this with the Petitioner "at least twice." She also explained to the Petitioner "multiple times" that there was no physical evidence because the actual offense occurred weeks before he was arrested. When asked about the communication problems between her and the Petitioner, she stated that "[the Petitioner] had his version of what he thought should happen or wanted to happen" and he simply

"did not want to listen." Second counsel did not testify about the alleged altercation between the Petitioner and first counsel.

The post-conviction court denied the Petitioner relief, finding that both first and second counsel "far exceeded the minimum requirement for representation in a criminal case," the Petitioner's guilty plea was voluntary and knowing, and that the Petitioner was provided access to the evidence against him. The court also found that the Petitioner's claim that he was physically coerced into pleading guilty was "unbelievable." On December 7, 2015, the post-conviction court issued a written order denying relief. It is from this order that the Petitioner now timely appeals.

## ANALYSIS

On appeal, the Petitioner appears to argue that he received ineffective assistance of counsel because first and second counsel failed to: (1) investigate his whereabouts on the dates alleged in the indictment and (2) "review discovery material with him or show him any physical evidence." He also asserts that first counsel physically threatened him before he pled guilty and that "[b]ut for the coercion to plea, [the Petitioner] would have prevailed at trial."[2] The State responds that the Petitioner received effective assistance of counsel, that his guilty plea was knowing and voluntary, and the post-conviction court properly denied relief. Upon review, we agree with the State.

Initially, we note that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation

---

[2] The Petitioner additionally asserts that he was denied a change of counsel and a speedy trial but fails to provide any legal authority or citations to the record for these contentions. Accordingly, these issues have been waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The Petitioner argues that his attorneys did not investigate his whereabouts for the dates listed in the indictment and that he was not "physically present" to rape the minor victim. The record reflects that second counsel explained to the Petitioner that the dates in the indictment alleged that the rape occurred sometime during that period, not that it occurred on every date listed in the indictment. Even if the Petitioner was incarcerated or had an alibi for some of the dates listed in the indictment, he admitted to engaging in sexual intercourse with the minor victim "approximately [ten] times over the previous three years" in his statement to police. The post-conviction court found that the Petitioner had two competent attorneys who provided effective representation to the Petitioner. The record supports the post-conviction court's findings. Moreover, the Petitioner did not present any evidence of an alibi for the dates listed in the indictment at the post-conviction hearing. Because the Petitioner has failed to establish deficient performance or prejudice resulting from first or second counsel's failure to investigate his whereabouts on the dates alleged in the indictment, he is not entitled to relief.

Next, the Petitioner argues that neither first nor second counsel discussed or reviewed any "discovery material" with the Petitioner and that he was unaware of the State's evidence against him. However, he fails to explain what discovery he was deprived of or how his attorneys were ineffective in this regard. Furthermore, first and second counsel testified that they reviewed the State's evidence with the Petitioner, which included nude photographs of the victim on the Petitioner's cellphone and text messages between the Petitioner and the victim indicative of an ongoing sexual relationship. Second counsel explained to the Petitioner several times that there was no physical evidence of the offense or physical copies of his statements to police because his statement was not transcribed. However, during the suppression hearing, an investigator testified to the contents of the Petitioner's statement, and the Petitioner offered no evidence to dispute this testimony at the post-conviction hearing.

First counsel also testified that if the State had any physical evidence, they would have discussed such evidence with the Petitioner. The post-conviction court found that "[t]here is no evidence that [the Petitioner] was denied any information relative to his defense or that he was denied access to any of the evidence against him." The post-conviction court accredited first and second counsel's testimony and discredited the Petitioner's testimony, and we do not review a post-conviction court's determination of a witness's credibility. See Vaughn, 202 S.W.3d at 115 (Tenn. 2006). Accordingly, the Petitioner is also not entitled to relief on this issue.

Finally, the Petitioner argues that he was physically threatened by first counsel and was forced to enter a guilty plea. Following the Petitioner's indictment in Case No.18919 the Petitioner was offered a plea agreement, which he subsequently refused. The

Petitioner was later charged in a superceding indictment with especially aggravated sexual exploitation of a minor. The State offered to nolle prosequi the charge of aggravated statutory rape if the Petitioner pled guilty to two counts of rape. In his brief, the Petitioner claims that his guilty plea was involuntary because, "his ability to make considered, thoughtful decisions in his case [was] removed by the threat of physical violence presented by his trial counsel." While not entirely clear from his brief, we understand the Petitioner's argument to be but for first counsel physically threatening him, the Petitioner would have insisted on a trial rather than entering a guilty plea. Although the Petitioner's argument is vague and misstates the applicable law,[3] we will nonetheless address this issue on its merits.

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; see Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

The record shows that first counsel told the Petitioner that if he refused to plead guilty to two counts of rape, he was facing a possible sentence of thirty-seven to seventy years. The Petitioner testified that first counsel's alleged behavior and the possibility of receiving a seventy year sentence at trial, "scared" him and that he "did what [he] had to do" and signed the plea agreement. First counsel denied grabbing the Petitioner or coercing the Petitioner to plead guilty. After hearing the proof, the post-conviction court accredited first counsel's testimony and found that the Petitioner's claim that he was physically coerced into pleading guilty was "unbelievable." See Vaughn, 202 S.W.3d at 115 (Tenn. 2006).

---

[3] In his brief, the Petitioner states that "[b]ut for the coercion to plea, [the Petitioner] would have prevailed at trial." The correct standard is that the Petitioner must show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See Serrano, 133 S.W.3d at 605 (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The Petitioner's argument conflates the idea of proceeding to trial with achieving a favorable disposition at trial.

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

Here, the Petitioner was questioned by the court and the court fully explained the rights the Petitioner was waiving by pleading guilty. In response, the Petitioner confirmed that he understood the terms and legal consequences of the plea agreement and that he was satisfied with second counsel's representation. The Petitioner had an opportunity to raise any questions about the rights he was waiving and he declined to do so. The post-conviction court found that his plea was "as voluntary and knowing as it could possibly be." There was no indication at the guilty plea hearing that the Petitioner was coerced or forced into entering his guilty plea or that his guilty plea was involuntary. Moreover, the post-conviction court accredited first counsel's testimony and we do not review a post-conviction court's determination of a witness's credibility. See Vaughn, 202 S.W.3d at 115 (Tenn. 2006). The record fully supports the post-conviction court's findings. He is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE

-9-